**UNITED STATES of America,**
**Appellant,**

v.

**Dimitrios KOSTOPOULOS**
**et al. Defendants,**

**Angelo RIGAS, Eric Patton, Steven Patton et al. Defendants–**
**Appellees.**

No. 03–1077.

United States Court of Appeals,
Second Circuit.

Dec. 28, 2004.

Thomas R. Fallati, David C. James, Ronald G. White, Roslynn R. Mauskopf on the brief, for appellant.

Jack Kaplan, Susan B. Kalib, Ira Lee Sorkin for Eric Patton, Michael S. Sommer, Elliot Silverman, Patrick S. Sinclair for Angelo Rigas, Douglas T. Burns for Constantine Stamoulis. Michael Bachner for Lampros Moumouris, for Defendants–Appellees.

PRESENT: JACOBS, B.D. PARKER, and HALL, Circuit Judges.

## AMENDED SUMMARY ORDER

SUMMARY ORDER

The United States has taken an interlocutory appeal from an *in limine* evidentiary ruling by the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *D.J.*) declining to admit out-of-court statements made by Defendant Steven Patton to cooperating witness Michael Nicolaou. Nicolaou was Steven Patton's stock broker and the statements at issue regarded Patton's non-public knowledge of an impending merger. The District Court excluded the statements on the grounds that they were hearsay and did not fall within any recognized exception to the hearsay rule.

Familiarity with the relevant facts, procedural history and issues raised on appeal is presumed. We review a District Court decision "not to except [a] statement from the hearsay rule" for abuse of discretion. *United States v. Detrich,* 865 F.2d 17, 20 (2d Cir.1988).

This prosecution arises from an investigation into insider trading in advance of the public announcement of a merger between two poultry companies, WLR Foods, Inc. and Pilgrims Pride Corporation. The government's theory is that Eric Patton "tipped" his brother Steven about the merger, and that Steven passed this information on to Nicolaou, who tipped others. Nicolaou is now cooperating with the government, which seeks to have him testify about statements allegedly made to him by Steven Patton in a telephone conversation.

During the government's investigation, Eric and Steven Patton were granted immunity and both testified before the grand jury that Eric did not tip Steven regarding the merger. On the basis of this testimony, the government obtained an indictment

charging both with perjury. Although these perjury charges were originally joined in the same indictment as the security fraud and conspiracy to commit securities fraud against Nicolaou and those he tipped, the District Court severed the perjury charges against the Pattons.

The government moved the District Court *in limine* to admit in both trials Nicolaou's testimony about what Steven Patton had said about the merger. The government proferred that Nicolaou would in essence testify that Steven "stated that he had learned that WLRF was going to be bought out within a few days at a particular price ... Steven Patton asked, in effect, 'What do you think, should we buy it, how could I buy it?'"

The District Court denied the government's *in limine* motion. It ruled that at the conspiracy trial Nicolaou could not testify as to what Steven Patton told him. It also ruled that at the perjury trial, the statements could be admitted against Steven as his own admissions but were not admissible against Eric Patton. The government moved for reconsideration, which was denied. The government made a second motion for reconsideration a few days later, on a different theory of admissibility, namely, that the statements were not hearsay because they were not being offered for their truth, but rather to show that Steven had knowledge of the merger and its terms.

After the District Court denied the government's second motion for reconsideration, the government filed an interlocutory appeal. While the appeal was pending, the government moved to remand to the District Court on the basis of new information, contending that Nicolaou was now expected to testify to a new version of what Steven Patton had told him: in the first version, Nicolaou told the government that Steven never identified any source of his information, but in the second version,

Nicolaou was prepared to testify that Steven Patton told him that Steven "had obtained the merger information from someone who worked at [WLR Foods, Inc.]." We granted the government's unopposed motion to remand to permit the District Court to consider the new information. The District Court adhered to its prior ruling.

The government then reinstated its appeal contending that the statements were not hearsay because they were not offered to prove the truth of the matters asserted, but rather as evidence of Steven Patton's knowledge of the impending merger. As an initial matter, the appellees challenge our appellate jurisdiction, contending that a new notice of appeal was required when this case returned to us after remand. However, the motion for remand, which was granted, sought relief within *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), which allows for return of the mandate to this Court without a new notice of appeal.

■ On the merits, the government's argument here is similar to the "state of mind" argument offered in its original motion *in limine*. *See, e.g., Fun–Damental Too, Ltd. v. Gemmy Indus.*, 111 F.3d 993, 1003–04 (2d Cir.1997) (evidence that retail customers complained about product confusion was admissible, either as non-hearsay under Rule 801, or under the Rule 803(3) exception for statements of the declarant's state of mind). The government contends that the District Court erred in refusing to admit the statements as non-hearsay, because they were not offered to prove that WLRF would be taken over at a given price and date by PPC but were offered to prove that Steven "was in possession of this information"—whether true or not—"prior to the public announcement of the merger." The government described the mere fact that Steven Patton possessed such information prior to the

merger as "a critical link in the chain of evidence establishing that it was communicated to him by his brother, who was one of the small handful of WLRF corporate officials with knowledge of the merger." This link would be necessary, according to the government, to establish both the insider trading charges against the seven tippee defendants and the perjury charges against Steven and Eric Patton.

We are not persuaded. While we have held that "statement[s] may occasionally be offered, not to prove their truth, but solely for the limited purpose of proving that they were made," *United States v. Harwood*, 998 F.2d 91, 97 (2d Cir.1993), such statements "may be admitted however, only if the mere fact that they were made is relevant to some issue in the case." *Id.* Here, however, the statements are hearsay because they have no evidentiary value unless they are true. In other words, the evidentiary link the government seeks to have the jury construct by the statements' introduction—that Steven's brother Eric was the source of the information contained in the statements—"[cannot be] drawn . . . unless [the jury] [finds] the proffered statements to be true." *United States v. Abreu*, 342 F.3d 183, 190 (2d Cir.2003) (rejecting defendant's assertion that the proffered statements were not hearsay because they were not offered for their truth).

▪ Next, the government contends that even if the statements are hearsay, they are statements that so far tend to subject the speaker to criminal or civil liability that they are nevertheless admissible. *See* Fed.R.Evid. 804(b)(3). As guidance on the admissibility of a statement against penal interest, we have recently held that a statement qualifies under Rule 804(b)(3) only if "a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest." *United States v. Saget,*

377 F.3d 223, 231 (2d Cir.2004). On the basis of the evidence currently before the District Court, there was no abuse of discretion in concluding that the statements did not qualify under the Rule as ones significantly tending to subject Steven Patton to criminal or civil liability. His musings about whether or not trading was permissible on the basis of what he had learned, while perhaps tendentious, do not, without more, qualify as statements against his interest in avoiding such liability.

For these reasons, it was not an abuse of discretion or an error of law for the District Court to exclude the statements. The District Court may reconsider its decision in light of further evidence at trial, but the government's motion *in limine* to have the statements admitted into evidence was appropriately denied, and accordingly, the judgment of the District Court is hereby affirmed. We have considered appellant's other arguments and find them to be without merit.